First case on the setting today is Weiss v. Illinois Department of Employment Security and it's 5-13-306. Counselor, ready to proceed? Good morning, your honors. Counselor, may it please the court, Assistant Attorney General Linnea Guachianson on behalf of the State Appellants. Section 405-100 is the declaration of policy for the Illinois Unemployment Insurance Act and it reflects the legislature's concern for involuntary unemployment, that is, unemployment that was not caused by the individual's misconduct. The act was meant to lighten the burden on those who are involuntarily unemployed by issuing benefits to them, but certain people are disqualified from receiving benefits under the act. Section 602A provides that an individual who's been discharged for misconduct in connection with her work is not entitled to benefits under the act. Cases like Lojek v. Department of Employment Security and Nichols, which we cited in our brief, have clarified that the Unemployment Insurance Act is not meant to benefit people who are unemployed because of their misbehavior. Under Section 602A of the act, misconduct is defined as the deliberate and willful violation of a reasonable work rule or policy which harms the employer. In this case, Wise worked as a cook and her supervisor instructed her to put ice on certain food items where the temperature had become too high. This was a reasonable request in that if the food wasn't properly, if it wasn't stored at the proper temperature, it could become contaminated. And the supervisor's request in this case involved a safety issue, that is, it would be unsafe for them to serve contaminated food to conceal clean customers. In response to her supervisor's request, Wise said that she was not going to do it and that she was tired of doing everybody else's jobs. She made clear that she would not follow the supervisor's reasonable instruction and, in fact, Wise did not show the food items as requested. In the adjudication summary, Wise admitted to having said that she would not follow the supervisor's instruction. But then later, when she testified at hearings, she said that she meant to do it but that another employee had stepped in before she got a chance to. Regardless of her claims, the Board of Review, in its role as fact finder, determined that she had disregarded her supervisor's authority and that she had done so intentionally. Therefore, she was discharged and the Board of Review concluded that Wise was ineligible to receive unemployment insurance benefits. In this decision, the Board observed that there is a standard of behavior that an employer has the right to expect. The Board found that Wise's intentionally refusing to submit to her supervisor's authority was a harm within the meaning of Section 602A of the Act and that it disqualified her from benefits. The harm that the Board identified in this case, which is the willful refusal to submit to the supervisor's authority, has been recognized in many Illinois cases as being enough to disqualify a person from receiving unemployment insurance benefits. As we explained in our brief, cases like Green Law v. Department of Employment Security, where an employee was fired for telling her supervisor to kiss my grits, the Board's decision to deny benefits was upheld. In Green Law, the court stated that a claimant may be disqualified on the basis of misconduct when she uses abusive language, and the court found that the phrase kiss my grits was abusive. In this case, are you looking at the harm as actual harm or potential harm? I know there's been cases that describe actual harm versus potential harm. Do you think it's actual harm here or potential harm in this case? I think there's an argument for both. Certainly, the case law has referred to insubordination most commonly as being a potential harm, but I think that there's an undercurrent in a lot of the cases that hold that deliberate disregard for an employer is an independent harm. So I think it could be analyzed as either. And if it were potential harm, is there any 5th District authority to support potential harm being good enough? I'm not aware of 5th District authority, but the bulk of Illinois case law has found that potential harm is enough to qualify, or rather to disqualify an employee from receiving unemployment insurance benefits. Thank you. Counselor, I was unclear factually whether the icing, I'm going to call it, was actually part of her normal duties. Could you give me your take on that? And if it wasn't, does it matter? It was. So the record reflects that her supervisor, she was a cook. And during the hearing, her supervisor testified that all cooks are responsible for sort of ensuring that the food is stored at a proper temperature. So yes, it was part of her duties. But even if it were not part of her sort of scheduled duties, I'm not sure that it would matter because it's a reasonable request of the employer to ask her to ensure that the food is kept at a proper temperature. Thank you. So just sort of following up on the earlier question, you know, the case law typically refers to insubordination as a potential harm, and the weight of legal authority holds that potential harm is enough for a finding of misconduct. And this makes sense to find misconduct based on potential harm because, as the court recognized in Ferris v. Department of Employment Security, requiring actual harm in every case could lead to absurd results. And the example that the court used in Ferris was that if an employee stole money from his office but the police found the money and ultimately returned it, you wouldn't think, that certainly isn't what a normal understanding of the legislative intent would be for not finding that employee guilty of misconduct. Well, here I wouldn't think we'd want people to get sick from food poisoning before we found that there was harm. We're absolutely not going to harm. Both the circuit court's decision and Wise's appellate brief in this case read as if the court were conducting a de novo review. Wise essentially asked this court to independently assess whether her insubordination was serious enough to constitute misconduct within the meaning of the statute. She also argues for a less deferential standard of review and claims that the employer bears the burden of proving misconduct. But we're here on administrative review. And on appeal, this court reviews the administrative agency's decision. It asks whether the board's decision was clearly erroneous, that is, whether the court is left with a definite and firm conviction that the agency's decision was a mistake. It's well settled that on administrative review, a court does not substitute its judgment for that of the agency. And courts have frequently noted that it's appropriate to defer to the agency's experience and expertise. Here, the board determined that Wise's insubordination amounted to misconduct that prevented her from receiving unemployment insurance benefits. The board's decision was consistent with the case law that we've cited and with the overall purpose of the act, which is to exclude from benefits persons who've committed misconduct. The 1988 amendment that requires an employer to have been harmed by the employee's rule violation has been in existence for almost 30 years. And there are plenty of decisions that have interpreted Section 602A during that time period. And, in fact, the Ferris decision, which we cited, was decided just a few months ago. This is not new law, and our argument in this case is entirely consistent with the amendment. An employer must have been harmed, and in this case, Wise's deliberate disregard of its interest, in addition to the potential harm that could have resulted from customers eating contaminated food, constituted harm. The board's decision was not clearly erroneous, and we ask that it be upheld. Unless there are any questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Counsel. I have a fact question. Was there some kind of a thermometer in the food or something that you can tell when it needs more ice? I'm not sure that the facts are very clear on that point, Your Honor, but I think this supervisor was checking the temperature of the food somehow. Whether there was an actual thermometer constantly present, or she had some other mechanism for... Can you see... Or maybe you can just eyeball it and see if the ice is melting. If there's ice there, melting what? Yes, Your Honor. I don't know that the record is really clear on that point. But there were actual temperatures that were noted in the records. That's true. So they must have been using some sort of... Something other than eyeballing. Measuring devices. That's pretty darn good. Right. Right. May it please the court, counsel, I think there are two issues presented on this appeal. The first one is, does Section 602A of the Unemployment Compensation Act require proof of actual harm to the employer in order to disqualify a terminated employee from receiving unemployment benefits? And then the second one is, obviously, following from the first, did Clara Weiss's conduct in this case cause actual harm to the casino queen? In our brief, we have traced the development of Section 602A. And I don't think I've ever seen a clearer case of a legislature's intent in amending a statute. Originally, Section 60... When I say originally, I mean before 1988. Section 602A didn't really even define a misconduct. It just simply said misconduct on the job, disqualifies the employee from benefits. Then the Jackson case was decided. The appellate court in the Jackson case was confronted with a situation where an employee was terminated for drinking on the job. And if you look at the facts of that, she was repeated several times before she was terminated. She was found with beer cans and whatnot and cautioned or warned about that. Ultimately, she was terminated. The appellate court looked at this and actually affirmed the reversal of the board's decision that she was guilty of misconduct. The appellate court's reasoning was that there was no evidence or no proof of actual or potential harm to the employer as a result of this conduct. So the court did use the language talking both about actual harm and potential harm. Then the Illinois Supreme Court accepted leave to appeal. And in its opinion, it reversed the appellate court. And it specifically said, using the language of both types of harm, that it didn't think that as a matter of law, either actual or potential harm to the employer was necessary to prove misconduct. So that's what the state of the law was after the Supreme Court's decision in Jackson. In response to that decision, then, the Illinois legislature amended Section 602A. And at that time, they had – they were charged with the knowledge of the prior case law in the state of the law. And the legislature was given – knew that these cases had talked about actual harm and potential harm. And under the amendment, which became effective in 1988, misconduct was defined to include a requirement that a violation of a work rule has harmed the employing unit or other employees. So the only way you can – the legislature didn't say may harm, may potentially harm, possibly could harm. What it says was has harmed. And with the prior case law being what it is, the only way you can interpret that to give effect to the intent of the legislature is to interpret that to mean there has to be actual harm to the employee. I think that's – that that's very clear, that that was what the legislature intended with this language. The question I have here is the question – is she lost her job because of insubordination or because there was not – she didn't put ICE on when – Well, I mean, the record is clear that she was fired for, quote, insubordination. So – She was not fired for not putting – I mean, she was fired for insubordination is what they – what was said throughout the proceedings. So how would the harm and not harm – you know, I have a hard time figuring that out. Well, the legislature requires proof of actual harm, so that's what the courts have to use as far as the definition. I mean, I can conjure up actual harm that could result from making an insubordination, Your Honor. Let's say she took a plate of linguine and threw it up against the wall as part of her insubordination. I mean, obviously there could be actual harm there. Or maybe she became so angry or belligerent that customers walked out of the restaurant. There would be actual harm to the employer there. Or maybe she scared some of the other employees and they went home or wouldn't do their jobs. She was to do a job. She was told to do a job and she refused to do it because it was somebody else's job, basically, I think is the argument. Right. Yes, that's correct, Your Honor. So – I think there has to be something more than just the insubordination. That's the actual harm to the employer resulting from the insubordination. Otherwise, the part of the statute that was specifically added by the legislature is just rendered meaningless. I mean, if the act of insubordination in and of itself, which involves the intentional violation of a work rule, also just by its very nature also results in harm, then the legislature's amendment is rendered meaningless. I think there has to be something more than that. Did she have work rules that were written down, what she had to do? Or just – Cooks had certain things – You mean as far as what their work was to be done? Right. Your Honor, I don't think that there was any reference to specific written work rules in the record. I wasn't representing the lady during that stage of the proceeding. My recollection of the record is that there was no reference to actual written work rules that said, part of your job is to add ice to the buffet lane. But if someone is in charge of managing you, tells you to do something, and you don't do it, is that a violation of some sort of rule? I think it was admitted that it was, that she was aware that you're supposed to follow your employer's rules. I don't consider that to be an issue, Your Honor. Do you think that it mattered that there were other employees who saw this and heard what she said to her supervisor, that it may infect the entire staff by her not following direction of her supervisor and putting the ice on the line? Well, potentially, Your Honor, yes, it could, potentially. There's no evidence that that, in fact, was the case here. And that is a situation similar to the Adams v. Ward case, which was decided a couple years, or not long after the statute was amended in that case. The Adams v. Ward case involved a janitor who saw a couple of uniforms laying on the ground with a pile of debris. He, what they were supposed to do with the dirty uniforms was throw them in one bin and be cleaned and reused. He took them and threw them all in the trash. Now, you can see potentially where that could harm the employer if the uniforms were then thrown away and lost. But what actually happened was that another employee, I think a supervisor, but another employee saw them in there and took them out. So the employer did not lose the uniforms. In Adams v. Ward, the court ruled, first of all, that under the amendment to the statute, actual harm to the employer is a requirement, and secondly, that there was no actual harm to the employer. Now, there was potential harm there, but there was not actual harm. I'm sorry, finish your. Well, all I was going to say was in the Adams v. Ward case, after it was decided, the Supreme Court declined leave to appeal. That doesn't necessarily mean that they were approving the decision, but they were given the opportunity to review it, and they declined. In fact, that's one of the so-called absurd results that the attorney general's attorney was talking about. I mean, you might look at that as a, quote, absurd result because it's dependent on whether or not they recovered the uniforms or not. But that just gets back to what the legislature did. What about the Ferris case, though? Because I do see similarities because of safety issues between that case and this case. Can you distinguish the case, or do you just believe it's wrongly decided? Well, I think it's wrongly decided, number one, Your Honor. But number two, in Clara Price's case, this whole encounter couldn't have taken more than just a couple of minutes. There was no real danger to the customers. But there is a safety issue that they were trying to prevent. There could be a safety issue, yes, Your Honor. But I don't think that that's sufficient to prove actual harm to the employer. Except that I don't really see any difference between this and Ferris. In fact, I think that this actually may have a more direct safety issue involved in that. I guess apparently they did test the ice, and it was creeping up towards a dangerous level. Where in Ferris, he was about to enter an area which he was not allowed in with the clothing he had on. So the potential harm was maybe closer to becoming actual harm in this case. Well, if he had gone into the uncontaminated area, Your Honor, then the actual harm would have occurred. Yes. I think the Ferris case was not decided correctly. It's difficult to distinguish the two cases factually because of just what Your Honor said. I think this gets back to whether the legislature's language requires proof of actual harm or not. We're saying that it does, and I think it's clear that that was their intent. There's not a whole lot more to be said. I think I had a presentation with Your Honor's questions. We pretty well covered all the comments I would make. Unless any of Your Honors have additional questions, I will conclude my presentation. Thank you, counsel. Thank you, Your Honor. Rebuttal. Your Honor, Section 602A of the Act requires there to have been harm, and courts have consistently interpreted that section as including either actual or potential harm. In this case, there was, to follow up on a question from the court, there was a written policy against insubordination, and Clara Wise was aware of that policy. Insubordination has consistently been found as sufficient to render an employee ineligible for benefits in cases like Greenwall and Stovall and other decisions that we've cited in our brief. I would say also that in terms of cases cited by Wise, they're distinguishable, as we noted in our reply brief. Most of them turn on whether or not the employee's conduct was intentional. In the Adams v. Ward case, the employee thought that the company uniforms were trash, and that's why we threw them in the trash. But in this case, there's really no dispute that Wise's conduct in not following her supervisor's request was intentional. Well, she said she was just joking, but I think that would be more of a credibility issue for the board to decide. That's right, Your Honor. And the board didn't credit her testimony and found that she intentionally refused to follow her supervisor's request. Therefore, if there are no questions from the court, we would respectfully ask that the Board of Review's decision be reinstated. Thank you, Counsel. Thank you. The court will take the case under advisement. You'll be excused. Thank you very much for your presentation.